# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CLAUDIA SMITH AND
WILBERT WALKER, on behalf of
themselves and all others similarly situated**                 **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 1:98cv212BrR**

**TOWER LOAN OF MISSISSIPPI, INC., ET AL.**         **DEFENDANTS**

---

## MOTION FOR REIMBURSEMENT OF
## ADMINISTRATIVE COSTS

---

Defendants move the Court to direct the Settlement Administrator to reimburse First Tower Corp., the parent corporation of Defendants, for administrative costs related to issuance of Notice of Settlement and distribution of settlement funds. Over $900,000 remains in the Settlement Fund (exclusive of the Attorneys' Fees Fund) after extensive efforts to disburse such funds to Class Members. Given the substantial burdens associated with settlement administration and the presence of such a considerable unexpended monetary sum, Defendants respectfully submit reimbursement of First Tower Corp. for administrative costs paid to third parties is warranted. Reimbursement of First Tower Corp. would still permit the disbursement of significant sums to charities and would not compromise settlement objectives. In

further support of this motion, Defendants state:

1. The Court preliminarily approved the Class Action Settlement Agreement on April 16, 2002, and directed issuance of notice to the Class. The Settlement Administrator utilized the services of DMCS/Sourcelink (DMCS) to assist in the mailing of the Notice of Settlement. DMCS is the largest mail production facility in the State of Mississippi. Over 100,000 Notices of Settlement were mailed to Class Members. Errors were subsequently discovered, however, associated with these mailings. A previously undetected computer software deficiency at DMCS caused duplicate mailings to be made to approximately 34,684 Class Members and no Notice of Settlement to be mailed to approximately 36,370 Class Members. (*See* Mem. Op. at 15.)[1]

2. Due to the errors of DMCS associated with mailing of the Notices of Settlement, the Court directed issuance of supplemental notice. The Court directed that supplemental notice be mailed to those Class Members to whom the previous notice was not mailed and also directed republication of notice on two more occasions in the same newspapers previously utilized. While not required by the Settlement Agreement, the Court further directed the mailing of another notice to Class Members for whom notice was returned as "undeliverable." The notice directive of the Court required searches for more current addresses through the National Change of Address

---

[1] References to "Mem. Op." are to the Court's Memorandum Opinion filed on March 31, 2003, which contains findings addressing notice to the Class.

Program, and to the extent that process was unavailing, through a consumer reporting service such as Equifax. (*See* Mem. Op. at 16.)

3. Supplemental Notices of Settlement were mailed to the 36,370 Class Members to whom notice had not been previously mailed. The Settlement Administrator again used the services of DMCS for assistance in mailing. After this mailing of supplemental notices, DMCS discovered 9,775 of such notices had incomplete addresses and promptly remailed them. Out of the 36,370 supplemental Notices of Settlement first mailed and the 9,775 supplemental Notices of Settlement constituting the remailing, approximately 20,000 supplemental Notices of Settlement were returned as "undeliverable." The Settlement Administrator proceeded with a second mailing of such notices even though the Settlement Agreement imposed no such obligation. Updated addresses were obtained to the extent available and second supplemental notices were mailed to 15,680 Class Members. The supplemental Notice of Settlement was also duly published as directed by the Court. (*See* Mem. Op. at 17.)

4. The costs of the original mailings in the Spring of 2002 paid to DMCS were $50,813.98. The costs of original publication paid were $14,063.97.[2] (*See* Affidavit of J. Leland Martin, Jr. attached hereto as Exhibit A.)

---

[2] These costs and the publication costs referenced in paragraph 5 do not include the charges of the Natchez Democrat as the invoices were not retrieved in recent record compilation. The Settlement Administrator identified but waived payment of approximately $2,850 in fees associated with the original issuance of notice.

5. The costs associated with the mailing and publication of the supplemental Notice of Settlement were considerable. The remailing of the additional notices required significantly larger efforts of the Settlement Administrator as contrasted with the time expended in the original mailing. Fees and expenses paid to the Settlement Administrator for these additional efforts were some $39,946. Payments for the republication of notice totaled $20,985.56. Payments of $6,301.05 were made to Equifax. DMCS agreed to bear the majority of its costs associated with the mailing of supplemental notices. Consequently, payments to DMCS related to the supplemental mailings, net of credits, were approximately $4,408.20. (*See* Affidavit of J. Leland Martin, Jr. attached as Exhibit A.)

6. Implementation of the Settlement following the multiple appeals has also entailed considerable effort. On the Distribution Date the Settlement Administrator, among other things, caused the mailing of 62,777 checks to Class Members entitled to cash payments and the mailing of an additional 34,032 letters to Class Members advising them of entitlement to credits. Over 18,000 checks and over 13,000 credit letters were returned from this original mailing. Consequently, a second mailing consisting of 16,634 checks followed,[3] but over 11,000 of these checks were returned. As Class Members have continued to inquire of the Administrator and provide additional addresses, checks have been re-issued and mailed to such Class

---

[3] Not being required, there was no second mailing of credit letters.

Members. The Administrator has fielded hundreds of telephone inquiries. (*See* Report of Settlement Administrator filed October 14, 2005.)

7. Costs paid to DMCS associated with the Distribution Date mailings and supplemental mailings total $61,158.88. Payments made to the Settlement Administrator for services related to the distribution process total $102,667.25, with an additional $6,100 estimated to be due for services rendered since August 31, 2005. Record search expenditures included another $1,995.96. (*See* Affidavit of J. Leland Martin, Jr. attached as Exhibit A.)

8. Thus, total costs paid to third parties related to the original mailing and publication of notice addressing the Settlement Agreement were $64,877.95. Total disbursements made in conjunction with the supplemental mailing and republication of notice were $71,640.81. Costs incurred related to the distribution of cash payments and credits under the Settlement Agreement were $165,822.09. There is an additional estimated Settlement Administrator fee of $6,100 yet to be paid. These costs totaling $308,440.85 are all payments to third parties; no internal or inhouse costs are included. (*See* Affidavit of J. Leland Martin, Jr. attached as Exhibit A.)

9. Defendants recognize that the Settlement Agreement provides that proceeds attributable to returned distributions not subject to account credit are to be paid to charity. Defendants respectfully assert, however, that the present balance of undistributed proceeds (exclusive of undistributed attorneys' fees) of approximately $900,000 is much higher than anticipated at the time of execution of the Settlement

Agreement. Moreover, through no fault of Defendants, the notice and distribution processes have indeed proven to be costly endeavors to an extent not anticipated at the time of execution of the Settlement Agreement. Such total costs are over twice those estimated by Defendants. (*See* Affidavit of J. Leland Martin, Jr. attached as Exhibit A.)

10. Reimbursement of First Tower Corp. for the referenced costs paid to third parties should still leave some $600,000 available for distribution to charities. Award of such reimbursement would still mean that some $7.2 million would have been paid out by the Defendants in conjunction with the Settlement which also included and focused on substantial injunctive relief restructuring Defendants' business practices. Such a total award remains well within a range of reasonableness; no Class Member would be prejudiced by the reimbursement of First Tower Corp.

WHEREFORE, Defendants respectfully request that the Court enter an order directing the Settlement Administrator to reimburse First Tower Corp. for administrative costs of $308,440.85 as set forth above, or, alternatively, in such amount as the Court finds appropriate.

Respectfully submitted,

s/ Paul H. Stephenson, III
William F. Goodman, Jr. (MSB #4897)
Paul H. Stephenson, III (MSB #7864)
WATKINS & EAGER PLLC
Post Office Box 650
Jackson, Mississippi 39205
Telephone: (601) 948-6470

> Counsel for Defendants Tower Loan of Mississippi, Inc. and First Tower Loan, Inc.

Lawrence C. Gunn, Jr. (MSB #5075)
L. Clark Hicks, Jr. (MSB #8963)
GUNN & HICKS PLLC
Post Office Box 1588
Hattiesburg, Mississippi 39403-1588
Telephone: (601) 544-6770

> Counsel for Defendants American Federated Insurance Company and American Federated Life Insurance Company

## CERTIFICATE OF SERVICE

The undersigned counsel for Tower Loan of Mississippi, Inc. and First Tower Loan, Inc. certifies that he has this day electronically filed the foregoing Motion for Reimbursement of Administrative Costs with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Lawrence E. Abernathy, III
Post Office Box 4177
Laurel, Mississippi 39441-4177

Alfred Lee Felder
Post Office Box 1261
McComb, Mississippi 39649-1261

This 29th day of November, 2005.

s/ Paul H. Stephenson, III